## SUPERIOR COURT OF BALTIMORE CITY.

Filed July 13, 1914.

FREDERICK W. WOOD, ET AL.,
VS.
MAYOR AND CITY COUNCIL OF BALTIMORE.

*Richard H. Pleasants* for petitioner.
*S. S. Field* for respondent.

BOND, J.—

The petition avers that the city has failed to keep that portion of Green Spring avenue which is subject to its jurisdiction in such repair as is required by the terms of the transfer of the road to the city, and by an act passed by the General Assembly on that subject. And the writ of mandamus is sought to compel the performance of the duty which is thought to have been so cast upon the city.

Counsel for the petitioners have dwelt upon the supposed contractual duty; and have proceeded largely upon the theory that a special obligation to keep the road in a high degree of repair thus arose, and might be enforced alone by mandamus. And if this is not so, they argue, the contractual element at least has some part in determining the duty and obligation of the city, and is to be considered in connection with the statutory requirement as to the repair of the road.

It may be inferred from the evidence that, as the petitioners seem to believe, those who took part in the transfer of this road, intended that it should be maintained as part of the park system of the city, with a surface similar to that of park roads. But no such intention was expressed; certainly no such standard of upkeep was made obligatory upon the city in such a manner that a court could take hold and enforce the obligation. The only requirement stated anywhere was that the road should be kept in "proper repair." And this is the same measure of duty stated in the statute.

But I am unable to agree that the contractual undertaking, whatever it may have been, can be considered by the court in this proceeding. It seems settled that the writ of mandamus does not lie, except in very rare cases, to enforce a merely contractual undertaking, and that upon a petition for the writ the court has to consider the public duty alone, that devolved upon the municipality, by statute or general law.

High on Extraordinary Legal Remedies, Sec. 415a.

And after all the duty from both sources in this instance appears to have been the same.

The question, what is "proper repair" for this road? what the standard of repair by which the city's performance of its duty may be tested? is a formidable one for a court of law to solve. The city officials contend that their duty, even under the law specifically referring to this road, is only the usual one of keeping the road safe for passage; and they produce testimony to show that it may at least be used without danger of injury. Witnesses for the petitioners fear some danger to automobile springs and machinery from use of the road. But the court would not, I think, be justified in finding that the road is not safe within the meaning of the rule referred to by the respondents. And my conclusion is that the city's contention is correct, and that the requirement of proper repair cannot be interpreted into an obligation any larger than that ordinarily cast upon the municipality in reference to streets and roads.

But there are other reasons, of, perhaps, greater importance, which seem to me to deny the propriety of issuing of the writ in such a case as this is. Suppose we should consider "proper repair" of Green Spring avenue, under all the circumstances, to be something better than that which gives merely safe passage. We should find the evidence to be dealt with beyond this point conflicting in some respects. It leaves no doubt that the road has not been kept in repair according to the ordinary standard of park roads; and perhaps it can be said to fall below the modern standard of repair on good country roads. There is evidence tending to show that it is, and always has been, close to the standards of many roads eighteen years back, when this road passed into the control of the city, although possibly that retrospect would in many instances furnish us standards of neglect rather than of performance. It has been difficult, indeed, and naturally so, for the witnesses to give any measure of this road's condition, and difficult to suggest any standard of proper repair which might be commanded by a court order. And this very fact makes clear, I think, the ground on which the case should be decided.

Doubtless the court could examine the road itself and arrive at a satisfactory finding as to its condition, and decide whether it is in safe or proper repair according to any given standard. But even if it should find that the city had not fulfilled its duty and kept up the required state of repair, the remedy of mandamus would not, I think, be applicable. It is impossible practically for the court to apply the remedy; and it seems to me the courts have not been entrusted with such power in the distribution of the powers of government.

It is clear that mandamus may issue to compel the performance of a purely ministerial duty; and that the duty to repair a road or street is considered such a ministerial one, in so far at least, as it involves taking clearly defined steps such as putting a surface on the road where there has been none, removing obstructions, building a bridge rail, and the like, to make the road safe and passable. 4 Dillon on Municipal Corporations (Fed.), Sec. 1493. But here the application is for mandamus to compel repairs in a higher degree; and I believe the authorities would not justify the issue of the writ for such a purpose. I do not see how it is practically possible.

To give an effective remedy it would not be sufficient merely to order the road kept in "proper repair," "good repair," or in repair of any other such vaguely descriptive character. The court would first have to fix upon a standard of full performance of the city's duty, a standard of proper repair, which must be so exact that the court could test compliance with it, for the court should not pass an order too indefinite to be enforced. Then the court would have to be prepared to test compliance.

The difficulties presented are insurmountable in the ordinary working of a court of law. They are the same which prevent a court of equity from enforcing specifically a contract for repairs, to construct according to specifications, and the like. 6 Pomeroy's Equity Jurisprudence, Sec. 760.

Furthermore, if the court can grant the remedy prayed for here, it seems to follow that it may by a multiplication of such petitions be brought to supervise and direct the work of repairing all the highways under the city's jurisdiction. I understand the petitioners' counsel to accept this as a logical conclusion of their argument, although they think it is a result not likely to be realized in practice.

The determination of the methods, the material, the distribution of available money among the various sections and highways, all things which must be determined upon as preliminaries to repair work, are matters of judgment and discretion which I think must inevitably be entrusted entirely to those officials. They may err in their judgment, from time to time, and may be unjust to the users of some highways, but their judgment is final, and, I think, cannot be supervised or corrected by a court. I mean to say that I understand the determination of all such questions has been left by the people to the executive or administrative officials, and not in any extent to the courts.

Upon these considerations I think the writ must be denied.